## Charles F. Forster and Albert C. Hawes v. The Second National Bank of New Albany, The New Albany Rail Mill Co., New Albany National Bank, Union Trust Co., Smith Corrugating Co., and World's Columbian Exposition Co.

1. PERSONAL PROPERTY—*When the Title Passes—Attachment.*—A Chicago corporation purchased a quantity of iron from an Indiana corporation to be used in the construction of a building, and gave its note for it. Being delayed in transmission, other iron was purchased and used in its place. Upon its arrival the Indiana company agreed to take it back and give up the note. The iron was warehoused in the name of the agents of the Indiana company and afterward taken on an attachment. *Held*, that the title to the iron vested in the Indiana company and as such was liable to attachment as its property.

2. ASSIGNMENT FOR THE BENEFIT OF CREDITORS.—An assignee has a reasonable time after the assignment to take possession of the property of the assignor as against execution or attaching creditors, but twenty-seven days is an unreasonable delay.

3. PROMISSORY NOTES—*Assignment Vests the Legal Title.*—The assignment of a promissory note vests the legal title in an assignee, and he is the proper person to bring suit.

Attachment Proceedings.—Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding.   Heard in this court at the October term, 1895.   Reversed and remanded with directions. Opinion filed December 12, 1895.

McMURDY & JOB, attorneys for appellants, contended that agreements of sale of this kind where property is delivered and the title is not to pass except upon condition, are void as to creditors, unless the laws of Illinois with respect to acknowledgment and recording are complied with; and in this case these laws were not complied with; in fact, the arrangement itself was oral, and so, in the nature of things, they could not be complied with.   Brundage v. Camp, 21 Ill. 330; McCormick v. Hadden, 37 Ill. 370; Murch v. Wright, 46 Ill. 487; Lucas v. Campbell, 88 Ill. 447; Latham v. Sumner, 89 Ill. 233; Van Duzor v. Allen, 90 Ill. 499; Chickering v. Bastress, 130 Ill. 206; Fifield v. Farmers' Bank, 148 Ill. 172; Bastress v. Chickering, 18 Ill. App. 198; Fleury & Co. v. Tufts, 25 Ill. App. 105; Hadfield v. Berry, 28 Ill. App. 376; Cleveland Co-Operative Stove Co. v. Matson, 30 Ill. App. 372; St. Louis & Iron Machine Works v. Kimball, 53 Ill. App. 636.

Plaintiffs need have no beneficial interest in the note sued on.   Spofford v. Norton, 126 Mass. 853.

Where one person has the legal and another the equitable interest in the same property, any action in respect to said property must be brought by the person who has the legal interest.   Dicey on Parties to Actions, page 43; Truman's Notes, page 51.

An assignment unaccompanied by an immediate delivery and not followed by an actual and continued change of possession of the assigned property is presumptively fraudulent and void as against creditors.   It is not only the debtor's duty to deliver the property to the assignee, but it is the assignee's duty to take and retain possession.   Bishop on Insolvent Debtors, Sec. 351.

A provision that an assignee shall not be accountable for property which does not actually come to his possession, renders the assignment void, for he is bound to use due dil-

igence to obtain possession.    Bump on Fraudulent Convey-
ances, 423.

H. H. C. MILLER, W. S. OPPENHEIM and WALTER S. HOLDEN,
attorneys for Second National Bank of New Albany, ap-
pellee, contended that the real controversy of facts involved
in this suit, is the nature of the agreement which had been
entered into between the Smith company and the Mill com-
pany, leading to the return of the iron on June the 6th.
We take it that this court will not reverse the findings of
the court below on questions of fact, unless those findings
are manifestly and palpably against the weight of evidence.
The findings here have the same weight as the verdict of a
jury.    St. Louis R. R. v. Winkleman, 47 Ill. App. 276;
Schweinfurth v. Matson, 37 Ill. App. 162.

As to the failure of the assignee to reduce the property
to his possession, it seems to us that the case of Lowe v.
Matson, 140 Ill. 108, cited by appellants, conclusively settles
the question against them.    While quoting certain parts of
this opinion, they omit the following, which directly op-
poses their contention:    "A conveyance in trust for credit-
ors is another instance of a transfer not absolute to which
the exception applies that the possession consistent with
the terms and object of the deed is not legal fraud, though
it is admitted to be a circumstance from which fraud may
be inferred susceptible of being counteracted by proof."
Vernon v. Morton & Smith, 8 Dana 247; Christopher v.
Covington & Smith, 2 B. Mon. 357; Mitchell v. Wellock, 2
W. & S. 253; Klapp's Assignee v. Shirk, 1 Pa. St. 589.

This view is also sustained by Stamp v. Case, 41 Mich.
267; Johnson v. Sharp, 31 Ohio St. 611; Ingraham v.
Wheeler, 6 Conn. 267; Welt v. Franklin, 1 Binn. 502;
2 Am. Dec. 474; Goodwin v. Kerr, 80 Mo. 276.

In Chitty on Contracts (7th Am. Ed. page 412,) the au-
thor says:    "And when the transfer is founded on a good
consideration, and there is no intention in fact to defraud
creditors, the legal presumption of fraud created by the non-
delivery of possession does not arise if the transfer or trans-
action were a matter of publicity or notoriety.    If the

assignment be notorious, fraud can not be inferred from the omission to possess."

Retaining possession by a defendant in execution after a sale of personal property by an officer is not fraudulent *per se* as to creditors, because of the publicity of such sales. Boardman v. Keeler, 1 Aikens 158.

ERNEST SEVERY, attorney for Smith Corrugating Company.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

Early in 1893, the Smith Corrugating Company ordered from the New Albany Rail Mill Company, an Indiana corporation, a lot of iron for the purpose of using it in the construction of a building at the World's Fair in Chicago. Before the iron was delivered, but after it had been shipped by the Rail Mill company, the Smith company gave its note, dated April 20, 1893, to the Rail Mill company for $1,555.88, the purchase price of the iron, and that note was subsequently discounted by the appellee, the Second National Bank. The iron was greatly delayed in transmission, but without the fault of the Smith company, and arrived too late to be used for the intended purpose—other iron having been purchased and used in its stead.

Upon the arrival of the iron in Chicago, the Smith company, through its president, made arrangements with the agent, in Chicago, of the Rail Mill company, whereby the Rail Mill company, by its agent, agreed to take back the iron and return the note, and accordingly the iron was, on June 6, 1893, warehoused at Chicago, in the name of the Waugh-Wilson Commission Company, which was the Chicago agent of the Rail Mill company. The connection of the Smith company with the iron seems to have altogether ceased with that transaction.

As agent of the Rail Mill company, the Commission company afterward sold a small amount of the iron, and the proceeds of such sale went to the Rail Mill company, but

the principal part of the iron remained as stored until it was attached, as hereafter stated.

On July 22, 1893, the Rail Mill company made an assignment, under the laws of Indiana, to the Union Trust Company of Indiana, as assignee, and the deed of assignment was recorded on the same day, in Floyd county, Indiana, and in Cook county, Illinois, on August 3d, next ensuing.

The Sloss Iron and Steel Company was an Alabama corporation and a creditor of the Rail Mill company, and held its promissory notes, and commenced an attachment suit in Cook county on one or more of said notes, and garnisheed the World's Fair corporation, but becoming satisfied that that corporation owed nothing to the Rail Mill company, dismissed the suit. Afterward the notes, aggregating $9,331, were assigned by the Sloss company to the appellants, residents and citizens of Illinois, who began this attachment suit on the same against the Rail Mill company, and attached the iron in question that had, as above mentioned, been taken back from the Smith company by the Rail Mill company.

The Second National Bank of New Albany, the Union Trust Company, assignee of the Rail Mill company, and the Smith Corrugating Company, severally filed interpleas in the suit, each claiming the iron upon different grounds.

The court, hearing the cause without a jury, found against the appellants on the attachment issue, and gave judgment that the iron attached was the property of the appellee, the Second National Bank of New Albany, as between it and all the parties plaintiff, defendant, and interpleading, and directed the sheriff to deliver the same to said bank upon its delivering to the Smith company the note it had given for the iron.

Whether the judgment of the Circuit Court was correct or not, must, so far as the Second National Bank of New Albany is concerned, depend upon the agreement between the Smith company and the Rail Mill company when, on June 6th, the iron was returned by the former to the latter company.

If that agreement had been that the iron should be taken

and sold and the proceeds applied to the payment of the Smith company's note, which had been given for it and was then held by the bank, a trust relation in favor of the bank as holder of the note, would have arisen, and the judgment would be right.

But that was most clearly not the agreement, and there was no agreement made that even tends to that result in any form it may be stated.

The evidence does not support the contention of appellee's counsel that the iron was turned back for the purpose of paying with its proceeds the note held by the bank.

Mr. Waugh, secretary of the Waugh-Wilson company, which was the agent in Chicago of the Rail Mill company, testified that "the iron was turned over to the New Albany Rail Mill Company because there was a delay in the shipment; the iron was to go on certain work of Mr. Smith's at the World's Fair, and he was obliged to buy iron to complete the contract with the World's Fair because of the delay; that had left him with this iron on his hands; he did not know where to get money to pay for it when the account became due, and said, 'Here, you take that iron and give me credit for it, * * * here, you give me back the note and you take the iron.' * * * Nothing particular was said in reference to the note at the time the iron was turned over to me, except that the note was paid by the iron. In other words, the payment of the note was advanced and the note was to be returned. I did not have the note there. * * * I have never been able to return the note. * * * The iron was returned from the Smith Corrugating Company on June 6th, and I immediately warehoused it. * * * I sold some of it * * * as agent of the New Albany Rail Mill. * * * The proceeds of this sale went to the New Albany Rail Mill Company in part. * * * I took this (warehouse) receipt in the name of the Waugh-Wilson Commission Company, as agent of the New Albany Rail Mill Company."

In all the testimony, there was nothing stated by any witness inconsistent with this testimony of Mr. Waugh, and

we fail to find in it any agreement, or understanding even, that the iron should be sold, or that its proceeds should in any way be used to pay or secure the note.

There is nothing to show that Smith knew at that time that the note had been discounted by the Rail Mill company, nor but that the Rail Mill company was at that time in good financial repute and credit. The inference is clear, from the evidence of both Waugh and Smith, for they both wrote to the Rail Mill company for the note to be delivered up, that they supposed the note was within the easy control of the Rail Mill company. The note was dated April 20th, and being at sixty days, was not due. Waugh testified that he wrote to Mr. Trinler, the manager of the Rail Mill company, for the note, and that Trinler said that inasmuch as the note was not due, he would take the iron and pay the note with it, and the note was to be given up.

Under the facts in the case, it seems quite clear that no trust relation in favor of the bank which held the note was created by the transaction, and that it was error to direct the delivery of the unsold iron to the bank.

By the judgment of the Circuit Court, the interplea of the Union Trust Company, assignee of the Rail Mill company, was dismissed. From that order the Trust company prayed, and was allowed, but did not perfect an appeal, and does not appear to be represented here, although its rights have been argued somewhat by the appellee, the Smith company, and by the appellant. We will, therefore, for the purpose of affording the full relief to which we consider appellants as entitled, say that it seems that the order dismissing the interplea of the Trust company was right.

The deed of assignment from the Rail Mill company to the Trust company was made and recorded in Floyd county, Indiana, which we assume was the place of the home office of the Rail Mill company, on July 22, 1893, and was recorded in Cook county, Illinois, where the iron was in warehouse, on August 3, 1893. This attachment was levied on the iron on August 18, 1893. There is no evidence tending even to show that the Trust company ever did anything

prior to the levy of the attachment, in assertion of its claim to the iron.

An assignee has a reasonable time after the assignment to take possession of the property of the assignor, as against execution or attaching creditors. Lowe v. Matson, 140 Ill. 103; Feltenstein v. Stein, 157 Ill. 19.

But so long a delay as here occurred, twenty-seven days, after the making of an assignment in Indiana, a State adjoining Illinois, is, in our opinion, too long, and is unreasonable. We therefore think that as to these appellants, at least, the interplea of the Trust company was properly dismissed. And in saying this we concede all that is urged upon us concerning the effect of the assignment, under the laws of Illinois, although made in another State.

Some point is made upon the conceded fact that the notes upon which the attachment was brought, were in reality the property of a foreign corporation, and had been assigned to citizens of Illinois for the purposes of the suit alone. By the assignment of the notes to the appellants, they held the legal title to the notes, and were the proper parties to bring suit. Ridgely Bank v. Patton, 109 Ill. 479; Lohman v. Cass Co. Bank, 87 Ill. 616; Caldwell v. Lawrence, 84 Ill. 161.

Our conclusion, therefore, is that the judgment should be reversed and the cause remanded to the Circuit Court, with directions to that court to render judgment in favor of appellants and against the said Second National Bank of New Albany and the Union Trust Company of Indiana on their respective interpleas, and to award to appellants a special execution against the attached iron.

Reversed and remanded with directions.