## Herby Worthy, Appellee, v. Christian H. Birk and Lina Birk, Appellants.

1. APPEAL AND ERROR—*decision on former appeal as controlling on question of competency of evidence.* The rule that the opinion of a court of review becomes the law of the case binding alike upon the parties, the lower court upon a retrial, and upon the reviewing court upon a subsequent appeal, includes and applies to a decision as to the competency of evidence.

2. CONSPIRACY—*inadmissibility of declarations of third person not made in presence of defendants.* In an action in which plaintiff charged defendants with conspiring together to injure him by charging him with the murder of his wife, etc., it was reversible error to permit plaintiff to prove declarations of a detective which were not made in the presence of any of the defendants, particularly where there was no allegation in the declaration that such detective was a co-conspirator, and where at most he was but an agent or servant of one of the defendants for some purpose, and where there

was no showing that in making the alleged declarations he was authorized to do so by such defendant, or that the declarations were made while he was acting within the scope of his authority.

3. APPEAL AND ERROR—*misconduct of attorney in examination of witness and in argument as reversible error.* In an action in which plaintiff charged defendants with conspiring together to injure him by charging him with the murder of his wife, and in furtherance of such charge removed her body from the grave and took therefrom and destroyed certain organs and replaced the body in the grave, where on the first appeal the court had held that testimony that one of the defendants, a physician, had on the day preceding the autopsy purchased arsenic, had been improperly admitted, plaintiff's attorney was guilty of improper conduct, where after calling an employee of said physician and asking her whether said physician sent her to buy arsenic on the morning of the day the autopsy was held, and after the sustaining of an objection, he recalled the witness and obtained the same ruling, and then in his argument improperly referred to the injecting of poison into said organs. ·And such conduct was condemned, and the judgment, although not large, was reversed, because the court had no way of knowing that the jury were not influenced thereby in weighing the evidence bearing upon the question of guilt or innocence.

4. APPEAL AND ERROR—*when improper argument not cured by instruction.* Improper remarks of counsel in his argument to the jury was ground for reversal, although objections to the remarks had been sustained and the verdict was not large, where such remarks were not based on the evidence and were a direct appeal to the passion and prejudice of the jury.

5. CONSPIRACY—*inadmissibility of declarations of one defendant not made in presence of others.* Where defendants were charged with unlawfully conspiring together, declarations alleged to have been made by one of the defendants, who was found not guilty, not in the presence of the other defendants, were improperly admitted, in the absence of evidence that such other defendants authorized the making of the statements in question.

6. APPEAL AND ERROR—*insufficiency of instruction to cure error in admitting declaration of one defendant in evidence against others.* Where four defendants were charged with unlawfully conspiring together with the intent of charging plaintiff with the murder of his wife, declarations bearing on the conspiracy charge alleged to have been made by one of the defendants, who was found not guilty, were improperly admitted as to the other defendants, and a motion to limit them to the defendant charged with having made them was improperly refused, where there was no evidence that such other defendants authorized the making of the statements; and an instruction directing a verdict for plaintiff against any defendant or

defendants the jury found were engaged in the conspiracy was erroneous, as the effect of such instruction was to tell the jury that even if the defendant found not guilty was not engaged in the conspiracy, his declarations could be considered against the other defendants.

7. CONSPIRACY—*impropriety of instruction admitting use of one defendant's declarations against others.* An instruction in a case where four defendants were charged with unlawfully conspiring together was erroneous which, in effect, told the jury that even if one of the defendants was not engaged in the conspiracy, yet his declarations could be considered against the other defendants, and which also authorized the jury to find for plaintiff if defendants conspired together with each other or any one else.

8. CONSPIRACY—*liability of husband and wife.* Under the law of this State a husband and wife cannot be guilty of conspiracy, and in an action based upon an alleged conspiracy, in which a husband and wife, with others, were defendants, the court stated that if it were possible that the husband and wife could be so guilty, the court could not see how the fact could be proved, as one is not a competent witness for or against the other.

9. EVIDENCE—*inadmissibility of declarations of incompetent witness.* Where a party to a suit is incompetent to testify against a co-defendant, his acts and declarations are not admissible to prove anything as to which he is not competent to testify.

Appeal from the Circuit Court of Jasper county; the Hon. WILLIAM B. WRIGHT, Judge, presiding. Heard in this court at the October term, 1921. Reversed and remanded. Opinion filed March 24, 1922.

ALBERT E. ISLEY, for appellants; W. F. JOHNSON, of counsel.

DAVIDSON & FITHIAN and ANDREWS & REAL, for appellee.

MR. JUSTICE BARRY delivered the opinion of the court.

In an action on the case, appellee sued Christian H. Birk, Lina Birk, J. W. Hutton, T. L. Hutton and George Stanley, charging them with having unlawfully conspired together with the intent of injuring him by charging him with the murder of his wife, Grace Worthy, and in furtherance of said unlawful conspiracy to injure his name and fame and without probable

cause and without his consent removed her body from the grave, took therefrom and destroyed certain organs and replaced the body in the grave without said organs, etc. At the first trial appellee dismissed the suit as to George Stanley, and the jury found the coroner, T. L. Hutton, not guilty. There was a verdict and judgment against the other defendants, but on appeal to this court the judgment was reversed and the cause remanded because of erroneous rulings on evidence and instructions. *Worthy v. Birk,* 216 Ill. App. 653.

Upon a retrial the jury found J. W. Hutton not guilty and returned a verdict against Christian H. Birk and Lina Birk, his wife, for the sum of $750, upon which the court rendered judgment. The Birks alone have appealed.

On the first trial of the case the court permitted appellee to prove certain declarations of a detective named Talmage, which were not made in the presence of any of the defendants. On appeal to this court we held that the admission of that evidence was reversible error. It is a well-settled rule of law that the opinion of a court of review becomes the law of the case binding alike upon the parties, the lower court upon a retrial, and upon the reviewing court upon a subsequent appeal. This includes and applies to a decision as to the competency of evidence. The following are a few of the many decisions to that effect: *Wall v. Chesapeake & O. Ry. Co.,* 210 Ill. App. 136; *Victor Elec. Co. v. Miller,* 199 Ill. App. 577; *Brauer v. Laughlin,* 211 Ill. App. 534; *Cutler v. Pardridge,* 207 Ill. App. 221; *Scarlett v. National Live Stock Ins. Co.,* 202 Ill. App. 450; *Tisdale v. Davis,* 198 Ill. App. 116.

Notwithstanding that rule of law, counsel for appellee, on the retrial of the case, and over the objection of appellants, again insisted on proving the same declarations of Talmage made out of the presence of appellants, and succeeded in convincing the trial court

that our decision was erroneous and the proof was admitted.

Counsel and the trial court were entitled to entertain the opinion that our conclusions were unsound, but inasmuch as the statute has not conferred jurisdiction upon them to review and reverse our decision, they should have accepted it as the law of the case.

We are still of the opinion that the admission of that evidence constituted serious reversible error, but even if we thought otherwise, we would not be at liberty to change our ruling. In addition to what we said in our former opinion, we might add that appellee did not aver in his declaration that Talmage was a co-conspirator. At most, he was but an agent or servant of Christian H. Birk for some purpose, presumably to ascertain the cause of his daughter's death. There is no showing that in making the alleged declarations he was authorized to do so by Mr. Birk, or that they were made while acting within the scope of his authority.

On the former appeal we held that evidence to the effect that on the day preceding the autopsy, Dr. J. W. Hutton, one of the defendants, purchased four ounces of arsenic, was improperly admitted. That the only purpose such proof could serve was to give the jury the right to speculate as to some purpose for which it might have been purchased. The testimony of some of appellee's witnesses as to what was said at the cemetery before the autopsy indicated that there was a suspicion that Dr. Hutton or some one might put poison in the body of the corpse.

On the retrial, counsel for appellee called Mollie Hall, who testified she worked in the office of Dr. Hutton. She was then asked if Dr. Hutton sent her to buy some arsenic on the morning of the day the autopsy was held. The court sustained an objection to the question, but later during the trial she was recalled and the same question was again asked and

the court made the same ruling.   Counsel knew the
views of this court as to such testimony, and if he
desired to make a record and save an exception the
offer to prove should have been made out of the hear-
ing of the jury. ˙ Counsel were not satisfied with one
ruling on the question and called the witness to the
stand a second time and asked the same question.

It looks very much as if counsel deliberately, and
contrary to our decision, were endeavoring to give the
jury something on which to speculate.   They followed
it up by saying in their closing argument to the jury:

"Why were the organs of this woman torn apart?
They were torn apart so they could be sent to Chicago
loaded and reeking with poison and Herby Worthy
could be convicted and sent to the penitentiary.   *   *   *
They wanted to get poison into these organs so that
Herby Worthy could be charged with the crime of mur-
der.   *   *   *   This detective was there getting, I sup-
pose, eight or ten dollars a day for doing these things."

The court sustained objections to those remarks, but
a ruling does not always remove the ill effects of a
pernicious argument.   The argument was not based
on the evidence, was a direct appeal to the passion
and prejudice of the jury to go outside of the evidence
in reaching a verdict.   While the verdict is not large
and the amount thereof may not have been affected
by the argument, yet, we have no way of knowing that
the appeal did not influence the jury in weighing the
.evidence bearing upon the questions of guilt or inno-
cence.   Such a practice should not be tolerated and
courts should not undertake to determine the proba-
bilities as to what influence such remarks had on the
jury.   Counsel and litigants should understand that
verdicts so obtained are worthless.

It is one of the most important duties of a court
to see to it that litigants receive the fair and impartial
trial guaranteed to them by the law.   If this is not
done the administration of the law will become a mock-

ery,—a snare and delusion. Such a trial cannot be had if counsel are permitted to offer before the jury, evidence held to be highly objectionable, and to make inflammatory appeals to the passion and prejudice of the jury calculated to invite them to consider matters not in evidence.

After the death of their daughter, appellants consulted their attorney, W. F. Johnson, and wanted to know if there were any legal steps that they could take to get her child. They said they wanted the baby and would pay him to help them get it. One of them said they would give 40 acres of land for the baby and the other said they would give $1,000 for it. Counsel for appellee called Mr. Johnson as a witness and he was permitted to testify, over appellants' objections, to the foregoing facts. The objection should have been sustained. *Helbig v. Citizens Ins. Co.*, 108 Ill. App. 624. Appellants had a lawful right to consult an attorney with reference to the child. There was no suggestion that they wanted to get it in an unlawful manner. Even if the relation of attorney and client had not existed at that time, the evidence did not in any way tend to prove the averments of the declaration. There was no claim made therein that there was an unlawful conspiracy to get the child.

Dr. J. W. Hutton was a defendant and the jury found him not guilty. Two witnesses were allowed to testify on behalf of appellee to declarations alleged to have been made by Dr. Hutton in the office of Dr. Dennison in Chicago. The testimony is to the effect that the doctor said he was there representing Mr. Birk, father-in-law of appellee, and that he had come to see whether he could make some arrangement to get hold of the baby; that there would be a lot of trouble unless they got the baby. That he told Dr. Dennison that if he could get the baby he would get $1,000 from Mr. Birk and that Dr. Dennison could split the money or do whatever he wanted to with it.

That Dr. Dennison replied that he did not think appellee wanted to give up the child, but if Dr. Hutton wanted him to make the proposition to appellee he would do so. That Dr. Hutton then said, proposition or no proposition, you can tell him this, if you want to, that unless he gives this child up we are going to put a charge of murder against him, and Birk has all kinds of money and he will spend all kinds of money to put him in the penitentiary. The testimony was admitted over the objection of appellants, and their motion that the court limit it to Dr. J. W. Hutton was denied. The effect of the court's ruling was to make it competent as against all the defendants. The ruling was proper if they were engaged in an unlawful conspiracy.

The declarations were not made in the presence of appellants and there is no evidence that they authorized Dr. Hutton to make such statements. The testimony was not competent against appellants unless they and Dr. Hutton were co-conspirators, or they authorized him to do so. The jury found that Dr. Hutton was not a co-conspirator and appellee abided by that finding. The first instruction given for appellee directed a verdict in his favor against any defendant or defendants they should find from all the evidence and the facts and circumstances in evidence were engaged in unlawful conspiracy.

The effect of that instruction was to tell the jury that even if Dr. Hutton was not engaged in the conspiracy, yet, his declarations could be . considered against the other defendants. In a civil action the averment as to the existence of a conspiracy is, in a sense, a matter of minor importance, but it cannot be said to have no legal significance. It has an important bearing on the rules of evidence. If the evidence is sufficient to show a conspiracy, the acts and declarations of a co-conspirator are admissible, even though they occurred out of the presence of the others

and without showing that they were authorized by the other parties.

A verdict and judgment may be against a single defendant without proof of the conspiracy, but such proof is necessary to sustain a judgment against two or more defendants. 12 Corpus Juris 629; 8 Cyc. 673. The first instruction given for appellee was erroneous because it authorized the jury to consider the declarations of Dr Hutton as against appellants even though they found Dr. Hutton was not engaged in the alleged conspiracy. The jury might very well have concluded, and no doubt did, that even though Dr. Hutton was not a conspirator, yet from his statement he was the agent of appellants and they should be held responsible for what he said and did.

That instruction was also erroneous in authorizing the jury to find for appellee if the defendants conspired together with each other *or any one else.* There was no averment in the declaration that the defendants conspired with others. It informed the jury that it was incumbent upon the appellee to prove the conspiracy and that the defendants did the things charged in the declaration without probable cause, and also told the jury that the burden of proof was upon defendants to prove that there was lawful and probable cause to hold the inquest and autopsy. The jury could not tell from the instruction upon whom the burden of proof rested.

As all of the alleged conspirators have been found not guilty except appellants, the question is presented whether a husband and wife may be guilty of such a charge. There is some authority to the effect that they may be joined with others and all may be found guilty. There is one case which holds that husband and wife may be held liable jointly for a civil conspiracy. *Jones v. Monson,* 137 Wis. 478, 119 N. W. 179.

Where a wife brought an action for slander and the

language complained of was that the defendant said: "She and her husband have formed a conspiracy to cheat and defraud the company," the court held that under the common law husband and wife were but one person and that they could not be guilty of a conspiracy, and that the married woman's act does not in the least modify the common law in respect to the matter. *Merrill v. Marshall*, 113 Ill. App. 447.

There is much force in that reasoning, and we think it entitled to more weight than the Wisconsin case above cited. Under our law a husband or wife is not permitted to testify for or against the other except in certain instances not material to the matter under consideration. One of the exceptions is where one is acting as agent for the other. But proof of agency does not arise, even prima facie, from the fact of the matrimonial tie, nor from the declaration of the wife. *McNemar v. Cohn*, 115 Ill. App. 31.

We are of opinion that, under the law of this State, a husband and wife cannot be guilty of a conspiracy. But, if it were possible, we do not see how the fact could be proved. One is not a competent witness for or against the other (*Craig v. Miller*, 133 Ill. 300) even in a suit to recover for family expenses under the statute (*Hyman v. Harding*, 162 Ill. 357). If the wife were called by the plaintiff to testify that she and her husband had conspired against the plaintiff, she would certainly be an incompetent witness against her husband. If incompetent when called as a witness, upon what theory could it be held that her acts and declarations would be admissible?

Where a party to a suit is incompetent to testify against a codefendant, his acts and declarations are not admissible to prove anything as to which he is not competent to testify. *Bragg v. Geddes*, 93 Ill. 39; *Fruitt v. Anderson*, 12 Ill. App. 421; *Central Ry. Co. v. Mehlenbeck*, 103 Ill. App. 17-18. Declarations of the wife in the absence of the husband do not bind

him. *Keegan v. Kinnaire*, 12 Ill. App. 484. To admit the declarations of the wife would, in effect, make her a witness against her husband. *Burnett v. Burkhead*, 21 Ark. 77; *Hussey v. Elrod*, 2 Ala. 339. The admission of such proof would be in direct violation of section 5 of the Evidence Act (Cahill's Ill. St. ch. 51, ¶ 5) and the decisions of our Supreme Court.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*